Henry Stephen STIEHL, Appellant,

v.

The STATE of Texas, Appellee.

No. 57825.

Court of Criminal Appeals of Texas,
Panel No. 3.

June 13, 1979.

Rehearing En Banc Denied Sept. 19, 1979.

John T. Montford, Lubbock, for appellant.

Alton R. Griffin, Dist. Atty. and John C. Kilpatrick, Asst. Dist. Atty., Lubbock, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, PHILLIPS and W. C. DAVIS, JJ.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for aggravated robbery wherein punishment was assessed at 40 years. In various grounds of error appellant complains of the trial court's refusal to dismiss the indictment because he was subjected to cruel and unusual punishment by his pretrial confinement conditions; the exclusion of evidence of those conditions at the punishment phase in mitigation of punishment; denial of his motion for change of venue; refusal to appoint a psychiatrist to examine appellant; and denial of a limiting charge on extraneous offenses.

On January 26, 1976, two masked, rifle-bearing gunmen, one of whom was later identified as appellant, entered a United Super Market in Lubbock. They robbed the checkers and store manager of some $8500 in cash and then were interrupted by police responding to a silent alarm as they started to leave. In the ensuing confusion they dropped the money but managed to escape temporarily by taking two hostages.

After a brief automobile chase, however, they were captured when a police car rammed their car.

█ Appellant asserts that the indictment should have been dismissed because the conditions of his pretrial confinement constituted cruel and unusual punishment in violation of his constitutional rights. Appellant was a named plaintiff, along with other inmates in the Lubbock County Jail, in a federal suit against the Lubbock County Commissioners, the County Sheriff, and the Texas Commission on Jail Standards, alleging violations of their rights because of these conditions. They were successful in this action and a Memorandum Opinion was issued ordering various actions to correct deficiencies in living conditions and security in the jail.

Appellant's complaint is that the trial judge refused to give him relief in the present case for his confinement conditions. He asserts that dismissal of the indictment is the only appropriate remedy that would give effect to the constitutional rights involved and while such a remedy is extreme, it is not unusual. He likens his case to *Strunk v. United States*, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973), wherein the United States Supreme Court emphasized that dismissal of the indictment is the only remedy for failure to grant a speedy trial. That opinion merely reinforces *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which first established this remedy for violations of the speedy trial right. Appellant's attempt to link his claims of constitutional violations with the *Strunk/Barker* remedy of dismissal is not well taken. The *Barker* court stated:

> "The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused." 407 U.S. at 519, 92 S.Ct. at 2186.

The Court then enumerated some of the reasons why this was so and arrived at the conclusion that:

> "The amorphous quality of the right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived. This is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried. Such a remedy is more serious than an exclusionary rule or a reversal for a new trial, but it is the only possible remedy." 407 U.S. at 522, 92 S.Ct. at 2188.

Thus, the Supreme Court adopted this "unsatisfactorily severe" remedy because it was the only one possible. There are, however, other remedies available in instances where an individual has been subjected to cruel and unusual jail conditions prior to trial, as amply illustrated by the present case. Appellant participated in a federal suit against those in charge of the jail for the purpose of obtaining injunctive relief to correct jail conditions and monetary damages. The monetary claim was denied but injunctive

relief was granted and the defendants were ordered to immediately begin correcting the deficiencies. Any constitutional rights violated by the conditions of appellant's pretrial confinement were vindicated by the suit in which he participated and it is not necessary to resort to the extreme remedy of dismissing the indictment.

Next, appellant contends that he should have been allowed to introduce at the punishment phase evidence of the conditions in the Lubbock County Jail for the purpose of mitigation of punishment. Article 37.07, V.A.C.C.P. This contention is without merit. This Court stated in *Allaben v. State*, 418 S.W.2d 517, 519, "Evidence legally admissible to mitigate punishment or evidence that is relevant to the application for probation, if any, is also admissible." The factors that can be introduced in mitigation are either statutory, such as temporary insanity caused by intoxication, V.T.C.A., Penal Code Sec. 8.04(b), and all relevant facts and circumstances surrounding a murder or voluntary manslaughter, V.T.C.A., Penal Code Sec. 19.06, *Brazile v. State*, Tex.Cr.App., 497 S.W.2d 302, or are judicially created and related closely to the statutory factors, such as testimony about church membership as relating to character in an application for probation case, *Miller v. State*, Tex.Cr.App., 442 S.W.2d 340. All these factors have in common a relationship to the circumstances of the offense itself or to the defendant himself before or at the time of the offense. Factors which arise after the offense and independently of the defendant should not be allowed into evidence in mitigation of punishment. In the instant case, the circumstances of appellant's pretrial confinement had nothing to do with the offense for which he was prosecuted nor with any of the statutory mitigating factors. They were properly the subject of an entirely separate action.

Appellant asserts that the refusal to grant a change of venue was error because the publicity was such that it was impossible for him to receive a fair trial in Lubbock County. The applicant for a change of venue bears a heavy burden of proving the existence of such prejudice in the community that the likelihood of obtaining a fair and impartial jury is doubtful. *James v. State*, Tex.Cr.App., 546 S.W.2d 306.

The publicity appellant complains of concerned to a small degree the crime itself but to a much greater extent it dealt with the federal lawsuit over the jail conditions. As evidence appellant presented approximately 68 newspaper articles concerning the crime itself or the suit. Of these, five were general articles about jail conditions which did not mention appellant's name and five were about the trial of his partner in crime. Appellant was not singled out in any of the articles. His name was mentioned in 32 of the articles, almost always in conjunction with the other inmates who were plaintiffs in the jail suit. We have examined the articles and find that they are not inflammatory or hostile to appellant but instead seem designed to inform the public.

"The fact of publicity in the news media does not by itself establish prejudice or require a change of venue." *Knight v. State*, Tex.Cr.App., 538 S.W.2d 101, 103. See also, *Ransonnette v. State*, Tex.Cr.App., 522 S.W.2d 509. Of course, the primary consideration is that "[d]ue process requires that the accused receive a trial by an impartial jury free from outside influences." *Sheppard v. Maxwell*, 384 U.S. 333, 362, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966). We have examined the voir dire to determine whether the jury was in fact free from outside influences. *Von Byrd v. State*, Tex.Cr.App., 569 S.W.2d 883; *Freeman v. State*, Tex.Cr.App., 556 S.W.2d 287. We find that three jurors were struck for cause, either because of knowledge of the case from outside the media or acquaintanceship with a witness which might sway them in favor of the State. The entire panel was then asked if anyone had read or heard about the matter of this particular case. Three veniremen responded affirmatively but on further questioning stated that they had formed no opinion on the case and could decide it by the evidence. The rest of the panel did not have any prior knowledge of the incidents in question. We find no evidence that ap-

pellant was forced to accept trial by a prejudiced jury and, indeed, appellant does not contend he was forced to take an objectionable juror. *Brantley v. State,* Tex.Cr.App., 522 S.W.2d 519. There is no showing that the trial judge abused his discretion in refusing the change of venue.

■ The denial of a request for a court appointed psychiatrist is challenged. At the pretrial hearing both the lawyers for appellant stated that they felt he had been fully able to cooperate with them in preparation of the case for trial. The court noted that appellant had filed a number of pretrial motions and that in each one he had expressed his requests and thoughts fluently, intelligently, and legibly and that he had acted as a plaintiff in a successfully prosecuted federal suit on jail conditions in which no question of incompetency had arisen. The motion for psychiatric examination was carried until the end of the trial. Before sentencing, the judge stated that, based on his observations of appellant throughout the pretrial and trial, he found appellant to be competent to stand trial and aid his counsel in preparation and presentation of the case.

"It has been widely recognized that *Pate v. Robinson* [383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815] does not create an absolute right to a psychiatric examination . . . . The real issue to be resolved in cases such as this is whether the evidence presented to the trial judge is sufficient to raise a 'bona-fide doubt' as to the defendant's competence to stand trial, *Pate v. Robinson,* supra. In other words, there must be some indication to the trial judge that competency to stand trial is a *substantial issue* before a referral of the defendant to a psychiatric examination is required." *Hill v. State,* Tex.Cr.App., 429 S.W.2d 481, 483, quoting from *Tyler v. Beto,* 391 F.2d 993 (5th Cir. 1968).

There was insufficient evidence presented to raise the issue of appellant's incompetence. There were allegations in the motion for court appointed psychiatrist that appellant believed he was afflicted with some sort of mental disorder which "may well have destroyed his ability to perceive the wrongfulness of his conduct" and that he was presently in such a state as to render him unable to adequately assist his counsel in preparation of his defense. There was no evidence introduced to support the motion and counsel contradicted part of it by saying they had been adequately assisted by appellant. There was no abuse of discretion in denying the motion for court appointed psychiatrist.

■ Finally, it is asserted that a request for a limiting instruction should have been granted. The claim is based on the fact that the proof of the offense, aggravated robbery, included another offense, kidnapping. The kidnapping occurred when hostages were taken and was part of the res gestae of the offense.

"It is observed that it is not necessary to give a limiting instruction on an extraneous offense which constitutes a part of the res gestae of the offense for which an accused is on trial. 'In other words, where the testimony is simply used to prove the case as res gestae, or to prove any fact that forms a part and parcel of the case on trial so as to show the defendant's guilt, it is not necessary to charge limiting the effect of such testimony.' 31 Tex.Jur.2d, Instructions, Sec. 149, p. 725." *Arivette v. State,* Tex.Cr.App., 513 S.W.2d 857, 864.

Accord, *Saunders v. State,* Tex.Cr.App., 572 S.W.2d 944; *King v. State,* Tex.Cr.App., 553 S.W.2d 105. The twelfth and thirteenth grounds of error are overruled.

■ Appellant's pro se brief attempts to raise two additional grounds of error. The brief was not timely filed and does not cite any part of the record. It therefore presents nothing for review.

The judgment is affirmed.