**Carl D. LANG, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–87–026–CR.**

Court of Appeals of Texas,
Corpus Christi.

Feb. 11, 1988.

Rehearing Denied April 7, 1988.

Roy Hudspeth, Portland, for appellant.

Thomas L. Bridges, Dist. Atty., Sinton, for appellee.

Before BENAVIDES, UTTER and KENNEDY, JJ.

## OPINION

BENAVIDES, Justice.

A jury found appellant guilty of aggravated robbery and aggravated kidnapping. The trial court authorized the jury to assess punishment only on the aggravated robbery charge, which it set at 30 years imprisonment and a fine of $5,000.00. We affirm the judgment of conviction on the aggravated robbery charge.

The evidence established that appellant entered a grocery store and pulled a pistol on the night manager. Appellant then taped his pistol and hand to a young store employee's head. When appellant sent the manager to get money for him, the manager contacted the police. The police responded and proceeded to negotiate with appellant. Eventually, $2,000 was given to appellant and a car was provided for him. Still with the employee's head taped to appellant's pistol hand, appellant entered the waiting car with the money. Appellant managed to evade the police who followed his vehicle, and eventually deserted the vehicle and the captive employee, who was left unharmed. Several days later, a passing police officer identified appellant and took him to the police station. Appellant decided to confess to the offenses. From information appellant provided, the police recovered the clothing he wore when he committed the robbery and most of the money he took.

Appellant's court-appointed attorney has filed an "Anders" brief, in which he advances three arguable points of error for reversal. Appellant has also filed a pro se brief in which he advances five points of error. We will first examine appellant's attorney's brief.

Appellant's attorney's first point of error as an arguable basis for reversal is that the trial court erred in refusing to appoint a psychiatrist to examine appellant relative to appellant's competency to stand trial. In a pretrial motion, appellant's court-appointed attorney had sought a complete physical and psychiatric examination of appellant and a pretrial hearing on appellant's competency to stand trial. At the hearing on the motion, appellant's attorney stated that she had some question concerning appellant's competency to stand trial. As the basis for this belief, she testified that appellant made a number of statements and representations to her which on later investigation proved to be without substance; that the nature of those representations was such that it led her to wonder if appellant could sufficiently separate fantasy from reality at times; that there were gaps in appellant's recollection of the events of the incident in question which impaired her ability to adequately prepare for trial; and that appellant had exhibited odd behaviors for which he had no adequate explanation. She concluded that "(a)ll of these have raised questions in my mind about his competency at the time." She stressed that she was not drawing any conclusions concerning appellant's competency, but merely had "some question" about it.

Tex.Code Crim.Proc.Ann. art. 46.02 (Vernon 1979 & Supp.1988) sets out the provisions and procedures related to the question of an accused's incompetency to stand trial. Under section one, the test for incompetency is whether the defendant has a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," or has a "rational as well as factual understanding of the proceedings against him." *Loftin v. State*, 660 S.W.2d 543, 545–46 (Tex.Crim.App. 1983). Section three of Article 46.02 provides the trial court with discretionary authority to appoint experts to examine an accused's competence to stand trial. *See Leyva v. State*, 552 S.W.2d 158, 160 (Tex. Crim.App.1977); *Auldridge v. State*, 533 S.W.2d 821, 823 (Tex.Crim.App.1976).

■ While the evidence at the pre-trial hearing on appellant's motion may have suggested that the defense attorney had a

question about her client's sanity, competency to stand trial and sanity are not synonymous.[1]

Appellant's counsel did not assert that appellant was incompetent to stand trial. At the pre-trial hearing appellant's attorney made the following answers to the prosecutor's questions:

Q. Does he appear to understand what's going on in terms of the trial in terms of the jury and judge and what the prosecutor does and everything?

A. I think that he understands that he's on trial. I think he understands the prosecutor's role. I think he understands the jury's role; yes.

Q. But overall, he's been able to communicate with you.

A. He has no problem communicating.

■ After reviewing the individual facts of this case and in light of the foregoing answers by defense counsel, we hold that the trial court did not abuse his discretion in refusing to appoint an expert to examine appellant's competency to stand trial. We overrule appellant's attorney's point one.

The second point of error raised by appellant's attorney concerns a motion to suppress appellant's in-court identification because of pretrial suggestiveness. The motion named four persons who should not be allowed to give in-court testimony identifying appellant as the perpetrator of the aggravated robbery and aggravated kidnapping. After evidence was submitted at the suppression hearing on the motion, appellant's attorney deleted one person from the motion. Of the three remaining witnesses named in the motion, two testified at trial and described the events of the offense and made reference to "Mr. Lang" as the perpetrator of the offense. These two were the night manager, George Solis, and a store clerk, David Cordova.

The evidence at the pre-trial hearing indicated that very shortly after the robbery, which occurred September 4, 1986, Solis was shown a number of photographs and asked if he could identify the perpetrator;

however, he was unable to do so because the perpetrator was not shown in the photos that he received. While the record is not clear, it appears that Cordova was also shown a set of photographs; although some of those pictures looked like the perpetrator, Cordova likewise did not identify anyone as the perpetrator, since the perpetrator was not shown in the photos. On September 14, 1986, Solis and Cordova were each individually shown one picture of a lone suspect which they each identified as the perpetrator. Thereafter, the appellant, who had been identified in the picture by the two witnesses, was seen individually by Solis and Cordova through a one-way mirror, and each identified appellant as the perpetrator. Additionally, it would appear that Cordova, after identifying appellant's picture, also identified appellant's picture in a photo array.

■ The showing of the isolated photo of appellant to the witnesses was suggestive. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The statement made upon the presentment of the picture that the person shown had been picked up added to the suggestiveness of the procedure. The procedure was not made less suggestive because the appellant's photo may have been later included in a photographic array. The individual viewing of the appellant through the one-way mirror is likewise suggestive. Such identification procedures have been widely condemned. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). However, due process is not always violated by such procedures. *Biggers v. Tennessee*, 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267 (1968); *Garcia v. State*, 626 S.W.2d 46 (Tex.Crim.App.1981).

Convictions based on eyewitness testimony at trial, after pre-trial identification of the defendant, will only be set aside if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irrepara-

---

1. Additionally, we note there was no motion filed on behalf of the defendant indicating an intent to use insanity as a defense.

ble misidentification. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed. 2d 1247 (1968); *Garcia v. State,* 626 S.W.2d 46, 54 (Tex.Crim.App.1981).

We must review this case on its own facts to determine the likelihood that a particular pre-trial confrontation resulted in irreparable misidentification. *Simmons,* 88 S.Ct. at 971; *Garcia v. State,* 626 S.W.2d at 54. The factors which we must weigh against the corrupting effect of the suggestive identification procedures in assessing reliability are: (1) the opportunity of the witness to view the perpetrator at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the perpetrator; (4) the level of certainty of the witness; and (5) the length of time between the crime and the confrontation. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *see Garcia v. State,* 626 S.W.2d at 54.

■ Applying these factors, the trial court did not err in permitting Solis and Cordova to testify. Both witnesses testified they came within three feet of the perpetrator and had their attention squarely focused on the gun-wielding man in the grocery store; Solis viewed the man for about five minutes while Cordova viewed him for about forty-five minutes; both stated they would have identified appellant as the perpetrator even without the photographs to aid them and were sure of their identification. Only ten days passed between the incident and their pretrial identification of appellant; and the witnesses had not identified anyone other than the appellant as the perpetrator.

Additionally, we note the identification made by Solis and Cordova was not essential to the prosecution, nor was identification a seriously contested issue at the trial. The two police officers who were eyewitnesses positively identified the appellant as the gun-toting perpetrator of the offense charged in the indictment. The witness John Roberts, who had his head taped to appellant's gun hand during the robbery

and abduction, also identified the appellant. Appellant's confession, in which he admitted to the offense, was read into evidence.

The evidence overwhelmingly established appellant's identity as the perpetrator. We overrule this general point of error directed at the pre-trial identification procedures.

The third and final point of error advanced by appellant's attorney concerns appellant's oral request immediately prior to voir dire to excuse his court-appointed attorney. Appellant's reason for his request was that he could not communicate with his attorney. He offered no facts to support this conclusion, and his attorney stated that she was not having any trouble communicating with appellant, and that the first she had heard about any such problem was that day.

A trial court has no duty to search for counsel until an attorney is found who is agreeable to the accused. *Webb v. State,* 533 S.W.2d 780, 784 n. 3 (Tex.Crim.App. 1976); *Martinez v. State,* 640 S.W.2d 317, 320 (Tex.App.—San Antonio 1982, pet. ref'd). Once the trial court has appointed an attorney to represent the accused, the accused carries the burden of proving he is entitled to a change of counsel. *Webb,* 533 S.W.2d at 784 n. 3; *Chase v. State,* 706 S.W.2d 717, 719 (Tex.App.—Corpus Christi 1986, no pet.).

■ There is nothing in the record to show that the trial court erred in refusing to dismiss appellant's attorney and appoint him another. The record reflects appellant received adequate representation. We overrule this third and final point of error by appellant's court-appointed appellate attorney.

Appellant's pro se brief advances five points of error. By his first point, appellant argues that he was improperly convicted of two non-property offenses arising out of the same criminal transaction. He cites *Siller v. State,* 686 S.W.2d 617 (Tex.Crim. App.1985), for the proposition that only one non-property conviction may result from one indictment. *See also Drake v. State,* 686 S.W.2d 935, 944–45 (Tex.Crim.App.

1985), *overruled in part, Fortune v. State,* 745 S.W.2d 364 (1988).

■ Under *Fortune* and *Siller,* the remedy when two non-property convictions result from one indictment is to reform the judgment to reflect that there has been only one conviction and to allow punishment on only one conviction. *Fortune,* slip op. at 370; *Siller,* 686 S.W.2d at 620. Appellant was found guilty of two non-property offenses, but the jury was authorized to assess punishment solely for the aggravated robbery charge, and appellant was sentenced only on the aggravated robbery charge. To the extent the judgment reflects that appellant was convicted of aggravated kidnapping, it is modified to show a conviction only for aggravated robbery. Appellant's first pro se point is sustained.

■ Appellant's second point argues that the trial court erred in not ensuring that appellant could hear all the testimony and all the proceedings, thereby denying him his right of confrontation. Before trial, appellant and his attorney informed the court that appellant had trouble hearing. Appellant also complained during the early part of the trial that he couldn't hear what the judge or a witness was saying. When the matter was first raised prior to trial, the trial court responded that it would make sure the witnesses spoke loud enough for the appellant to hear, to which appellant's attorney agreed. During trial, the court continuously instructed witnesses to speak louder. From a thorough examination of the record, we conclude, contrary to appellant's assertion, that the trial court did in fact conduct the trial so as to ensure that the defendant would be able to hear the proceedings at trial. Moreover, there was never a valid objection raised which was pursued to an adverse ruling, which is necessary to preserve error. We overrule point two.

Appellant complains in his third point of error that the trial court failed to charge the jury with the fact that he safely released the captive employee, in order to mitigate the range of punishment on aggravated kidnapping. Since the jury was only asked to assess punishment on aggravated robbery, no error is presented. We overrule appellant's third point.

Appellant's fourth pro se point of error corresponds to point of error number two brought by his attorney, which we have already overruled. Accordingly, we also overrule appellant's fourth point of error.

Appellant's fifth and final point of error argues that the form of the jury verdict was fundamentally defective in that it did not allow the defendant to be found guilty of only one of the two offenses, but only guilty of both or not guilty of both. No objection was lodged to the verdict form, which was as follows:

I.

We, the jury, find the defendant ... guilty of Aggravated Robbery....

_____
Jury Foreman

II.

We, the jury, find the defendant ... guilty of Aggravated Kidnapping....

_____
Jury Foreman

III.

We, the jury, find the defendant ... not guilty.

_____
Jury Foreman

The presiding juror signed his name to the first two paragraphs above, and left the third paragraph blank.

■ In *Berghan v. State,* 683 S.W.2d 697 (Tex.Crim.App.1984), *cert. denied,* 471 U.S. 1056, 105 S.Ct. 2120, 85 L.Ed.2d 484 (1985), the Court of Criminal Appeals addressed a similar situation. The verdict form there included alternatives for the jury to find the defendant guilty of several offenses but did not include a form for finding the defendant not guilty. In the absence of a trial objection, the Court in *Berghan* held that there was no reversible error. *See also Bolden v. State,* 489 S.W. 2d 300, 301–302 (Tex.Crim.App.1972). The

verdict form in the instant case is less objectionable than the ones in *Berghan* and *Bolden,* since it does contain a form for the jury to find appellant not guilty. We overrule this last point of error.

The judgment of the trial court is REFORMED to delete the kidnapping conviction, and AS REFORMED, is AFFIRMED.